The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. We're going to hear an argument first. Griffin v. Baltimore Police Department. Mr. Curlett. Good morning, Your Honor. Judge Wilkinson, Judge Agee, and Judge Harrison, may it please the Court, my name is Charles Curlett. I represent Wendell Griffin in this case. Wendell Griffin was convicted of murder and spent 30 years in prison for a crime he did not commit because the police detectives investigating the case buried exculpatory evidence. When the evidence was revealed, Mr. Griffin was freed from prison. He has now brought suit under the Civil Rights Act to achieve a measure of justice. The defendants' appellees raise three grounds upon which they contend Mr. Griffin's claim should be barred. His claim is barred by the Supreme Court's decision in Heck v. Humphrey, that it is barred by collateral estoppel, and that the individual police defendants are entitled to qualified immunity. Each of these arguments must fail, and I will address each in turn. This Court should reverse the District Court's dismissal of the complaint because there is no procedural bar to suit. Heck and Progeny establish that a plaintiff with a 1983 claim for malicious prosecution must have access to a federal court. If a plaintiff is incarcerated, he must exhaust his habeas remedies before he can proceed with a 1983 claim. In doing so, he must achieve a favorable determination of his underlying case before the 1983 case can proceed. Didn't you have access to a federal court? Yes, Your Honor, and the problem, though, was that Mr. Griffin's efforts to access that court and his avenue's appeals were illusory. They were not practicable. Why not? Because he never had access to the exculpatory evidence that was suppressed and hidden him in his original trial, which would have allowed him to succeed in that forum. Wasn't the Maryland Freedom of Information Act in force when he was first incarcerated? Well, it was, Your Honor, but that would suggest that the burden shifts to Mr. Griffin, who at that point is incarcerated, and doing everything he can do to pursue his appeals and seek relief. Well, he had 30 years to make a FOIA request that eventually yielded this information that's pertinent here. What impaired him for that 30-year period from doing that? Your Honor, Mr. Griffin, upon his conviction, began the process of appealing that conviction, and that appellate record is extensive. It began with his appeal to the Court of Special Appeals in 1982, which was denied in 1983. He then filed a cert petition with the Court of Appeals of Maryland in 1984. That was denied. He subsequently filed a pro se petition in state court alleging ineffective assistance of counsel in 1993. So you weren't even subject to the Ed Babar. You could file him. The federal habeas petition was filed in the mid-1990s. I mean, Brady claims are many times filed on collateral attack, and many of them are vindicated. Well, I think that, Your Honor, Mr. Griffin did file a federal habeas petition in 1997. It was dismissed in 1998, and he appealed to this court. Had the police obliged by their constitutional duty to disclose the exculpatory evidence that they intentionally hid from Mr. Griffin? You know, I don't know whether they hid exculpatory evidence or whether they didn't, but the whole purpose of habeas corpus is to thresh out that question. That's what habeas exists for. And Mr. Griffin attempted to do that in 1997. But at that point, I have to assume— Did he seek production of the records at any place along the line? Your Honor, I don't know the answer to that question because I wasn't— Isn't that in— He did in 2010, Your Honor. I'm talking about however many 25 or 27 years before that. Did he seek production of records or the prosecutor's file? Mr. Griffin never stopped fighting. He never stopped looking for an avenue of redress because he knew that he was innocent. And to ask someone who is uneducated, who has been wrongfully convicted, who is imprisoned for a life term to—with no sophistication or legal acumen whatsoever—to successfully navigate the court system and hold him accountable for a failure to succeed earlier is patently unfair and unjust. Ultimately, he found his way to the right lawyer who filed the right request in 2010. And it was only then that a trove of documents that had never been made available to the defense were finally revealed. But the only barrier you can cite in the preceding almost 30 years is your characterization of your client as not being quite bright enough to have figured that out for himself. I mean, is there some other barrier that you can cite to? Well, at this—I don't know if—it would require me to speculate significantly, but I don't know that a public information request would have been successful at any earlier point in time. I mean, the police had a clearly established obligation at the time of this trial in 1982 to turn over this evidence. I understand that, but I don't understand what the limiting principle of this case is. Because it seems to me that if we agree with you, we're saying that whenever someone is out of custody, and regardless of whether they filed a habeas claim or whether they didn't, and regardless of how long they were in custody, and regardless of what barriers there were, they would automatically be able to file a 1983 action for damages. It's not automatic, Your Honor. And that's what the Spencer— I mean, the problem I'm having is that the—our precedent, when you look at Wilson, it was one year, six months of which was suspended, and then Covey was home confinement one to five years. But here we're dealing with 30 years, and I'm just concerned about opening the door to collateral attacks on state convictions 30 years or however many years after those convictions took place. I mean, that is a long—it's a long time, and habeas corpus is designed to cover and address the subject of collateral attacks on state convictions. And what we—but what we're—what I worry about is by ruling for you on these facts, we establish an end run around the habeas scheme and allow what effectively, really, are collateral attacks on state convictions 30 years after the fact. That process has to be fair, and that's what the case law tells us. The opportunity to pursue the habeas petition must be practicable. And in this case, I envision police officers who have taken the evidence that they know would exonerate my client. I mean, you're just assuming that conclusion. We don't know that the process wasn't fair. You've had innumerable courts that have looked at your petition. Never before—the only court that had the opportunity to see the evidence that had been suppressed freed Mr. Griffin. That information was never available to any court that reviewed this case prior to that time. Can I ask you a question? Were you—or was your client on it? Was there any notice that there might have been a Brady violation in this case? Why did they seek the documents in 2010? Because after the habeas petition had failed, again, Mr. Griffin never stopped looking for an opportunity to challenge his conviction. He filed a pro se petition for DNA testing of any evidence that may have been left available at the scene. The court reviewed that pro se petition, thought it would be appropriate for him to have counsel, appointed the public defender's office, who then reviewed the case. And it was that public defender that filed the Public Information Act request that revealed in 2011 for the very first time, as I say, voluminous— Right, right.  What I'm getting at is, was there any reason for your client to think there had been a Brady violation? When the public defender looked at the case, was there something about it that made him or her think, I better check the files here because there may have been a Brady violation? I don't think that there was anything specific. I don't think that that issue had been raised, that that was on it. I think that he was doing it for completeness sake. I think that he was doing it because if he was going to undertake a wholesale review of the case, he was going to do what we all do, which is go out and get all of the records that are available and file a Public Information Act request. So your argument has to be right, that there's something different about a Brady violation. Because by definition, the concern is that the information is not available. The basis for the complaint is sort of, almost by definition, not available. So it wouldn't have been practicable for him to have known he should pursue this claim. That's correct, Your Honor. And that is why the opportunity to pursue this claim at this stage, based upon our allegations in the complaint, is consistent with this court's precedent from the Spencer and Kemner case and Wilson and its progeny. How does one carve out a Brady violation? Because you don't find in the habeas statutes or the Heck decision that some claims are subject to Heck and some claims are not. And there are all sorts of claims that one can say one didn't know everything about when one comes into court. For example, it may be ineffective assistance of counsel for a lawyer not to have brought certain witnesses to the witness stand. And they may have been exculpatory. And the defendant may not have known of the existence of those witnesses. But that's part of the reason one has the habeas process to begin with. And a great deal of the time, the exculpatory information is available to the defendant. He knows about it because he's the one most acquainted with the circumstances of the crime. And also, it's not beyond his ability to request in habeas or through the Maryland Public Records Act the records of the police. That's the fact. He can do that. But the police hid the records. That's what makes this case different, Your Honor. But I asked you, did he request them? I do not know of a specific request beyond the requirements of discovery. Was there an impairment to requesting them? Certainly, everything was requested in discovery in the underlying criminal case. Counsel, for purposes of when we try to figure out when the statute of limitations, for instance, starts running in a habeas case, we do treat Brady cases differently. We say it doesn't start running because of this problem we're talking about. You don't have the information. That's the whole nature of a Brady claim. Until the defendant at least would have been on notice that there was a Brady problem, through reasonable diligence could have figured out there is a Brady problem in this case. And you're saying that there's no reason for this person, for your client, not to take the police at their implicit word. Of course, we handed over all the Brady information. That's what we have to do. If we didn't give it to you before your trial, it doesn't exist. That's correct, Your Honor. There's a long appellate record in this case. I think that Mr. Griffin would have had – I see that my time has expired. May I conclude my statement? The whole purpose of HECC is that you don't jump to a damages claim before the conviction is invalidated. One of the things about habeas corpus is that there's an interplay between federal and state remedies and federal and state law. This is a state conviction. As I understand it, there exists a panoply of state remedies. One would be a writ of coram nobis. Another would be a petition for innocence. Another would be a file for executive clemency. You want damages. There's nothing to prevent a state from having a tort action that provides you damages. There are state post-conviction proceedings that are not subject to EDPA limitations. There are at least five possibilities in terms of state remedies that one could pursue. What I don't understand is why we need immediately to jump to a 1983 action and to ignore that array of state remedies where it's a state conviction that is at issue and where it hasn't been shown that Maryland is somehow unresponsive to a claim of this nature. Your Honor, I think there are two answers to that question. The first is that the federal law and the Civil Rights Act guarantees a plaintiff access to federal courts under one of two circumstances. If there's a habeas exhaustion requirement, he has to meet it. If there's not, he's entitled to come into federal court. Even setting that aside— I understand what the Federal Civil Rights Act does, but I'm asking you to understand what the federal habeas corpus statutes do, which provide a more particularized way of attacking convictions. It has, but that process has to be fair. That specific scheme, which is set out in detail, it would seem to me prompts the more general thing that you're talking about. Again, I don't understand. I'm having a hard time understanding what the limiting principle of this is because there are a great many claims where one can say, gee, I didn't have full knowledge of this or that at the time I filed a habeas petition. The circumstances of this case, Your Honor, are so egregious that the actions of the Baltimore Police Department rendered the habeas procedures that were followed in this case a complete and total farce. The district court— How do we know that? We don't know whether you've even requested records. Your Honor— Over 30 years. Even without a request, the obligation was always present upon the police department to disclose the exculpatory evidence that it failed to disclose. That obligation never ceased. And so every time Mr. Griffin came into court to try to seek justice and say this was a wrongful conviction, he was deprived the tools that were necessary, that exculpatory evidence, to be able to present it before a court. Only when it was discovered, after it had been intentionally withheld by the police, as we've alleged in our complaint— Discovery where? I'm sorry, Your Honor? Discovery where? I don't understand the court's question. Where was the discovery that you're talking about? Well, I'm talking about the documents that were produced decades later in response to a Public Information Act request, when the detectives who were responsible for suppressing that evidence had moved on, and some administrator in the police or city law department, fulfilling its obligations, found that file and disclosed it. Does that indicate state remedies are open? Well, we would have to address each state remedy in turn, Your Honor, but those state remedies are not available here. But the state remedies seem to be available. Well— I mean, you've met success with the state remedies. Ultimately, once the evidence was revealed and the first court finally had an opportunity to hear the evidence with the light of day shining upon it and reach the right result and allowed Mr. Griffin to go free, yes, he was successful in state court, which is why— Well, I mean, you're using the very same evidence in state court. You're using the very same evidence for the 1983 claim that you're using to pursue your claim in state court. Fine, I don't begrudge you that. But why do we jump with all the heck problems and everything to a 1983 action, when state court remedies are not only theoretical available, but practically available? For damages, Your Honor? What for damages? I think I'm not understanding the question. The whole point is that—of heck is that you don't jump immediately to a damages claim before a conviction has been invalidated. And in this case, Your Honor, his conviction has been invalidated because the test enunciated in heck is whether a state court tribunal with the power to do so has declared invalid an underlying conviction. Where did that happen? That happened when Judge Razin said, I have reviewed the record in this post-conviction appeal. That's not a court order. You don't walk free, Your Honor, in the midst of a life sentence without possibility of parole unless a court has invalidated the underlying conviction and found it to be— And they reviewed it set free here because there was a consent decree. I'm sorry, Your Honor? Between the parties. Well— For time served. The problem with that— That seems like a fairly serious misrepresentation of what happened in the trial court, counsel. I certainly do not mean to misrepresent anything, and I can make my statement with greater specificity. The lawyer who—and this is in the joint appendix. There is an article in the city paper that was attached by the city law department to its briefing that recounts this story, and that's what I'm referring to now. Mr. Griffin was represented by the same attorney who represented James Owens, whose case came through this court last year when the district court's dismissal of the complaint was overruled. Mr. Owens' appeal was up first. He was offered the same proposition that Mr. Griffin was offered, which is, we can modify your sentence and you can get out early because your rights were violated in the underlying case, or you're going to have to wait for a new trial. And Mr. Owens said, I'll wait for my new trial. For a year and a half, he sat in jail until the day of his new trial when the state nullified his case, and he went free. And his 1983 case is now back in the district court. He was 47 years old when that happened. He had spent 20 years in prison. Mr. Griffin had spent 30 years in prison. He was 61 years old when he found himself before the circuit court making that application. And the same lawyer who had represented Mr. Owens, whose name is Stephen Mercer with the Public Defender's Office, turned to Mr. Griffin and said, you're going to get your new trial, but you're going to have to wait for a year and a half before that day comes. And I think they'll ultimately be unable to prove their case, but if you want to go free, this is what's available to you. That is a Hobson's choice. It is the product, in my view, of coercion and duress. But it is also the product of a finding by that judge, Gail Raisin in the Baltimore City Circuit Court, to say that prior conviction is not constitutionally sound. And I think that that is a fair application. We're going to find that in the record somewhere. We have alleged it. I know it to be true, Your Honor, and we have alleged it in our. You're not a witness. Well, I recognize that. Hold on, counsel. You represented to the court that the order entered and validated the conviction. And I'm asking you where in the record we find that. There is not an order that overturns the conviction. The conviction exists and is still a matter of record in the state court. I think that answers the question, counsel. My argument. I understand your argument. Thank you. I would be very careful in the future in representing facts to the court that do not exist in the record. I certainly did not mean to do otherwise, Your Honor. I will certainly be mindful in the future. My purpose in making the argument was to characterize what had happened in that court, not inaccurately, but rather as falling within the range of exceptions that are enumerated in the Heck case. And if I was unclear, Your Honor, I apologize. Thank you. Thank you. Good morning, Your Honors, Wilkinson, Agee, and Harris, and may it please this honorable court. This court should affirm the district court's decision to dismiss this case for three reasons. First and foremost, because the Supreme Court's seminal case. Could you raise the microphone a little bit? Thank you very much. Is that better? That's perfect. The Supreme Court's seminal case in Heck v. Humphreys clearly requires that a criminal conviction be invalidated before civil action attacking the facts underlying that conviction can be brought. In this case, it's undisputed that the conviction for which Mr. Griffin is seeking to attack has never been invalidated in any way by any court in this United States. Specifically, he still stands convicted of the first-degree murder of James Wise, and that conviction occurred back in March of 1982. He has sought some post-conviction relief, but there was nothing. What this court has said is that the Heck bar applies if someone is in custody or if someone practically could have sought habeas while in custody and failed to do so. Our opinion in Covey focused on whether he could have filed a habeas petition, and Wilson, too. The focus was on whether they could have filed a habeas petition. There was a question given the brevity of the sentence and the nature of the sentence, whether they could have. I know of very few courts that have been in a situation where there have been a 30-year sentence and where someone not only could have filed a petition but did, in fact, do so. That would really push that. To rule that someone after 32 years can bring a 1983 action for damages after failing to have his conviction overturned would open the floodgates for every single person who's been convicted of a crime to do nothing while in court and then come into this court after the expiration of their sentence and file a 1983 claim raising all sorts of damage remedies and all sorts of theories which the habeas court didn't have the opportunity to consider. All of the courts throughout, there's several courts that allow an exception to Heck under the concurrence in Spencer. All of those courts have basically stated that it only applies in two basic categories, where the person is petitioning for loss of good time credits, parole revocations, and things like that where they began to pursue and diligently pursued their habeas actions but for reasons outside of their control were unable to continue them when they got out. And that issue kind of separates this claim because those types of cases specifically, once a person comes out of court and is no longer in custody, they can no longer pursue their habeas remedy. Something like when you're attacking the conviction under habeas, even if you come out of custody, as long as you filed it initially because the court presumes collateral consequences associated with the conviction, they can still continue to proceed that. So several courts have said that the exception only applies to things such as parole, parole revocation proceedings, and stuff like that. But they've also said, at the very least, there's a due diligence requirement. Someone is supposed to quickly pursue their rights. And when they've had time, and that's why they look, I mean, the 10th Circuit, the 9th Circuit, the 6th Circuit, and the 7th Circuit have all indicated that it's really based on the brevity of the sentence, something outside the person's control. Can I ask you a question? Because you said it is sort of interesting to trace this law. This all comes from the Spencer concurrence. That's correct. Which comes from the Heck concurrence itself, right? And the Heck concurrence specifically says what we're talking about includes a case where someone discovers a Brady violation only after expiration of their sentence. It actually cites this case, the Brady violation that only comes to light after a sentence has been expired. And that's the line of cases we adopted in Wilson. Well, this case is factually distinguishable because even though the information came to light towards the end of his sentence, he was still incarcerated at the time. And had he stayed, had he continued to pursue his civil action and not accepted an agreement from the state for a reduction of sentence or continued to pursue his post-conviction proceedings, he would have ultimately, even if unsuccessful, would have had a habeas remedy on these specific facts. Let me just make sure I'm understanding, because I have a question about this. Are you arguing that after the Brady violation came to light, there still would have been time for him to bring a federal habeas action before he was released from prison, or only there would have been time if he had foregone the early release and decided to stay? If he had foregone the early release. Okay, and that seems like that's sort of what we're talking about with practicable. It's practical, you should just stay in jail for an extra couple of years and litigate your habeas claim. Well, I don't think that's the practicality requirement. What was the answer to Judge Harris's question? She asked you whether there was still time after the alleged Brady violation came to light. What was your response? Well, he still had time under. He could have also brought those same claims while he was on probation, because even though he was released and his sentence was reduced, he was still on probation and in custody for an additional seven months. And this was a real question I had. Whether anyone had argued, has this been developed? Whether there was time? Just assume for a minute he doesn't have to stay in jail. But from the time the Brady violation came to light to the time that his probation was terminated, would that have been enough time to bring a federal habeas claim? I agree with you at that point. I'm not sure that 100% there would be time, but I do know in Spencer and the Supreme Court noted. It was well over a year, wasn't it?  It was actually seven months I think he was on probation. Seven months of probation. He originally had three years, and he petitioned based on his conviction history, which he's put in this brief, which wasn't before the court below. He claims that he did petition to have that probation reduced at some point. So he sought further remedy from the state court, and they did ultimately reduce his. I guess if you would just assume just for the moment, what I'm interested in is, I'm interested in given the amount of time he was actually in custody for whatever reason. I understand your point as well. He took all the advantage of these reductions in his sentence, so he's not entitled to rely on that now. But assuming for a minute that what I'm thinking about is the amount of time he was actually either incarcerated or on probation. If you add that time together after the Brady violation was discovered, was there enough time to bring a federal habeas case? Because if there was, that seems like the narrowest, easiest way for you to win your case. And I'm not a habeas practitioner, so I can't say 100%, but I believe yes. Because had that petition just been filed, because he was attacking the judgment of his conviction, the court would have presumed collateral consequences, and therefore under the case law he would have been able to assert that petition. Okay. The heck bar is not a permanent bar. It's not a permanent bar. It doesn't say you can never get, you can never bring a 1983 action. Absolutely not. The question I have, given that the heck bar is transitory, between the petition for clemency or the petition of innocence or the writ of coram nobis, or even with respect to other state post-conviction remedies, and I would think there's nothing to prohibit states from having tort actions which provide him damages in the event that there has been some withholding of evidence. And that's the whole question I have, is why do we cut the states out of this scheme if there could be a tort action under state law, or they can hear it under constitutional law. I mean, he can bring, there's nothing that would say he can't bring the constitutional claim in state court or a tort claim in state court. That's, but it seems to me that he's made some headway with the state remedies already. And given the fact that the state judge and the sentence was modified to time served, that would seem to me to lay the foundation perhaps for either state post-conviction remedies or, if he wished to seek damages, for some sort of state tort action. And that's, I think since it's a state contention that the states shouldn't just be summarily cut out of this whole field of play, especially if the remedies are comparable. And then, you know, if one way or another he succeeds in the state tort action or one way or another he succeeds in getting the conviction invalidated, then the heck bar is likewise removed to any 1983 action. And there are other ways to get at this. It's not 1983 or nothing. There are other ways to get at it. And I also don't know, you know, whether there was an opportunity, it's been so long, whether there was an opportunity for him to request those records during his period of incarceration, even if he was not strictly on notice, there would bound to be the suspicion or it would seem like a normal thing for somebody to do in a habeas petition to raise a Brady claim. They are raised all the time. The difficulty I'm having here is given the length of the sentence. I don't understand the limiting principle. I'm having a hard time with that. And I absolutely agree. And I think that goes to the practical requirement. Because during the time period, he practically could have pursued those records. And those records have been available. The Maryland Public Information Act has been around since 1970. The plaintiff doesn't dispute that when requested, those records were produced. The department was not just sitting on those records. And a couple of the... It just seems, I can't even think of the right word, maybe it's almost unseemly for us to rule, oh, sure, every time someone's convicted, they should assume the police probably withheld some evidence and file and get their hands on the police report, because why would they think the police would actually have turned over... You know what I'm saying? It's just an odd presumption. And I'm not arguing that they should assume that, but I'm arguing that practically it was available. That availability of those records has always been there. And whether or not someone's going to practically assume to do it or not... If the records are... This goes to, I guess, if we're assuming that the trial judge here sort of thought there was a pretty good argument that there had been a Brady violation, right? That's what's alleged, certainly. And that's why he was released with time served. Doesn't the finding, I don't want to say finding, doesn't the sort of suggestion that there may well have been a Brady violation here, doesn't that incorporate, isn't one of the elements of a Brady violation that the defendant couldn't have easily gotten his hands on the information? Do you know what I'm saying? Well, under Brady, if the defendant's counsel conducts a reasonable investigation, I think Lynn v. Tarney was an unreported case from this court, where they said, look, there is an affirmative obligation on the part of this state to disclose records. We don't know whether a prosecutor in this case had the records or not, according to the complaint. But the claim is it wasn't disclosed. The Brady obligation, at least for the police, if it existed, would have run to just the prosecutor. So we can't assume that the records, how the records ultimately got there. But going back to your point, the, I'm sorry, I lost my, could you please repeat your question? I was just wondering, I thought that, and I'm trying to be very careful in how I talk about the record here, because I understand there is no sort of formal finding that there was a Brady violation, but there's at least the suggestion that a trial court judge was concerned about what had happened here. And I had understood that for a trial judge to say, I think there may have been a Brady violation here, that that incorporates one of the elements of the Brady violation, is that this information wasn't so easy to find that the defense counsel should have gotten it on his or her own. I don't know if that's an express requirement under Brady, but, I mean, Brady, the state would have had an affirmative obligation to turn over what they believed to be exculpatory. One thing that the plaintiff pleads in his complaint was at the time, the prosecutors had some sort of policy based on some case law in Maryland. They weren't turning over statements until witnesses were, in fact, going to testify. Now, in light of that, if that was the case here, I'm not 100% sure, but you would think a reasonable practitioner and defense attorney would request statements of all witnesses beforehand, not just witnesses who are going to testify. And that way, under the law, they'd be entitled to a little bit. They could do that during discovery and request it and get additional information. So I think it could have been a bill. They were on notice that there was a possible. I think there's absolutely a possibility that they were on notice. Totally. And going back to your point, Judge Wilkinson, about state remedies, there's been several courts on the Seventh Circuit who also applies an exception to Spencer, indicated in Nance v. Vercree in 1998, that it wasn't impossible as a matter of law for Mr. Nance to satisfy the heck burden because Illinois, like other states, allows a governor to pardon a released prisoner, offers remedies along the lines of Coronavis to wipe out lingering civil disabilities, and noted that some of these options may still be available to Mr. Nance. The same is the case here. But I think that state governments are becoming sensitive and alert to the fact that there are some old convictions that need to be reexamined. But what concerns me is that just as states are undertaking their own efforts at reform, that we cut them out of the picture with respect to their own convictions. I'm just worried about the principles of federalism here and whether we really discourage the kind of efforts at reform that are frankly taking place in states across the country. People understand sometimes the police do hide records. Sometimes the police do hide records. Sometimes prosecutors do hide records. If I were a pro se defendant or if I were a counsel defendant, I would be suspicious. I would not take the police department at its word. And I couldn't fault you for that, Your Honor. I just wouldn't. And that's why those remedies are available. I mean, in this case, Mr. Bloodsworth, who I think he had his conviction reduced, he was given a pardon in Maryland. There's other people who regularly seek quorum novis. I mean, quorum novis is there, and it's a post-incarceration remedy. And I think your concerns about federalism are correct. We should allow the state to see their process through. The state has processes and post-conviction processes and habeas-type remedies available. And under this court's decision in Owens, plaintiff's cause of action and his statute of limitations are directly related to the invalidation of his conviction. So none of those, his statute of limitations, his cause of actions, they don't accrue. Yeah, because once the heck bar is lifted in a 1983, action becomes available. The statute of limitations is not a problem. Absolutely. During the time that the heck bar is in place, the limitations period is told. It's told. It doesn't even start. So his cause of action has not even accrued. It hasn't even begun yet. And no one's trying to cut him out of it. It's a question of timing, but no one's trying to cut him out of it because the limitations period is not running. And the other thing, creating that type of a cause of action creates a limitation-less cause of action because at this point there would be no limitations. Basically, Mr. Griffin, under this court's ruling in Owens, has no limitations attached to his conviction because he's never gotten invalidated. So it's creating not only inconsistent rulings between the state courts and here, but it will also be creating inconsistent ruling within this court as to when this cause of action actually accrues because it hasn't accrued yet. And the statute of limitations hasn't even begun to run based on the case law that this court came down with last year. So his case is available. He has all the time in the world to pursue his post-incarceration remedies with the state of Maryland. If successful, maybe he can bring the cause of action. If not, he will actually have litigated the specific issues at issue, and a collateral estoppel bar, even though we believe it applies in this case because the conviction is what he is actually attacking, and that was finally litigated and actually litigated and meets the standard under Maryland law. At the very least, we would know one way or the other whether his claim was actionable going forward. And briefly, I'll address the qualified immunity issue. I believe the plaintiffs abandoned his malicious prosecution claim because it wasn't briefed before the court. But as to the Brady claim, I would just like to talk briefly because what we're running into with the Brady claim is in this court in 1998 decided Gene v. Collins for the first time. That case was ultimately vacated by the Supreme Court and was remanded. In the second opinion, it was a concurring opinion. It was authored by Your Honor Wilkinson. And the court ultimately in the first decision addressed the specific issue at question here. Whether or not in 1982 it was clearly established that police officers had Brady obligations to disclose exculpatory information to prosecutors, an affirmative obligation, the court looked at the case law, which was relied on in Owens, when they determined there's a con in Owens just last year, the court again looking back at the same case law, which began with Barbary, Boone, and Sutton, and determined and ultimately concluded with Goodwin v. Mertz, and said, well, in 1988 it was clearly established. So now we have an en banc panel of the court, which was and I admittedly vacated, but we have the decision of an en banc panel of the court showing that the reasonable jurors on this court at the time in 1988 believed that it wasn't clearly established in 1992, the specific year at issue here. And then some 14 years later or 16 years later in Owens v. Baltimore City State's Attorney's Office, a panel of this court found a different conclusion looking at the state of the law in 1988. Now, the Supreme Court has said in Reichel v. Howard where reasonable jurors disagree on the constitutional questions. Your arguments are not waived just because you don't bring them into oral argument. It's sufficient if you raise them in your brief. Thank you, Your Honor. For the reasons stated in the brief and the reasons presented to this court, my arguments conclude unless this panel has any additional questions for me. All right. Thank you. We thank you. Mr. Curlit, you've reserved some time for rebuttal, and we'd be pleased to hear from you. Thank you, Your Honor. Your Honor, I know that my original argument went substantially over the time allotted, and so I'm happy to answer any questions for the court. I would respond only to the notion that Mr. Griffin had adequate time to file a habeas petition, adequate opportunity to file a habeas petition once he was freed. It was seven months. The Wilson case, I believe it was a four-month period of time which was deemed to be. When was the information available? The information became available in 2011, and at that point Mr. Griffin, with the public defender representing him, pursued his state court remedy for post-conviction relief. On May 23rd of 2012, the deal was struck where the sentence was modified and Mr. Griffin was originally placed on three years probation. That probation was terminated early after seven months, and at that point the availability of habeas remedies was closed. As I understand what you've represented in your briefs, he would have had the information from the FOIA request at some time prior to August 4th, 2011. I believe that's correct, Your Honor. And so, taking the evidence in light most favorable to your client, the addendum to the reply brief has him released from probation December 19th, 2012. Correct, Your Honor. So he would have had a minimum of 16 1⁄2 months to have brought his action. Well, the action that he brought during that period. To have brought the issue up. I understand. And the issue that he raised and the form in which he raised it, consistent I think with Judge Wilkinson's point about federalism, was to bring it in the state court, to go back to the state court where the conviction had occurred to say, this is what happened and I want to seek relief. The outcome was that he was successful to the extent that he was freed from a life sentence based upon the constitutional infirmity of the underlying conviction. So from that point, the question becomes, what is Mr. Griffin's avenue to pursue damages? And now, the Owens case, and I think the court is aware, it's all the same lawyers in both of these cases. When Mr. Owens filed his original complaint in Baltimore City Circuit Court, keeping the case in state court, it was the city law department that removed that case to federal court. So when the time came to file Mr. Griffin's complaint, rather than go through that anticipated hurdle, the complaint was filed in federal court. And a 1983 claim, where you have a 30-year history of the insufficiency of the state court's treatment of this case to adequately protect the constitutional rights of Mr. Griffin, that's exactly what 1983 was designed for, to provide him a remedy to seek damages in the federal courts when all evidence is available. If there are no questions, I have nothing further. Do you have any further questions?  Thank you. Thank you, Your Honor.
judges: J. Harvie Wilkinson III, G. Steven Agee, Pamela A. Harris